# IN THE COURT OF APPEALS OF IOWA

No. 23-1755
Filed January 10, 2024

**IN THE INTEREST OF A.S.,**
**Minor Child,**

**K.S., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey, District Associate Judge.

A mother appeals the termination of parental rights to her child. **AFFIRMED.**

Patricia J. Lipski, Washington, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Samuel K. Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Ahlers and Buller, JJ.

**GREER, Presiding Judge.**

The mother appeals the termination of her parental rights to her child, A.S., born in April 2022.[1] On appeal, the mother argues both that the Iowa Department of Health and Human Services failed to exercise reasonable efforts towards reunifying her and A.S. and that the juvenile court should have ordered a guardianship rather than termination. She simultaneously wraps in a challenge to the juvenile court's failure to offer her six more months of time and insists that terminating her rights would not be in A.S.'s best interests based on the strength of their bond. We affirm.

**I. Background Facts and Prior Proceedings.**

This family first came to the attention of the department in June 2022, when A.S. was two months old, based on allegations that the mother was actively using methamphetamine while caring for A.S. and associating with known drug users. A child protective worker visited the mother and A.S. at their home and observed multiple signs of recent methamphetamine use in the mother. Citing safety concerns, the State requested that the department take custody of A.S., and the juvenile court issued an ex parte removal order the same day and confirmed the order in July 2022. A.S. has remained placed with fictive kin[2]—a family friend— under the supervision of the department since then.

---

[1] The juvenile court also terminated the father's parental rights; he is not a party to this appeal.

[2] "'Fictive kin' means an adult person who is not a relative of a child but who has an emotionally positive significant relationship with the child or the child's family." Iowa Code § 232.2(22) (2022).

Throughout the summer of 2022, the mother refused or did not participate in several requested drug tests. She was also in and out of jail on various probation violations and new charges; she remained in jail after mid-August. During the few weeks that the mother was not incarcerated, she participated in case management services, probation-based case work, family-centered services, and supervised interactions with A.S. The mother never progressed beyond supervised visitation with A.S. While the mother was in jail, she participated in video visits with A.S. twice weekly for fifteen minutes each time.

A contested adjudication hearing was scheduled for August 2022, and after the mother stipulated to it, A.S. was adjudicated a child in need of assistance (CINA) the day of the hearing pursuant to Iowa Code section 232.96A(3)(b) and (14). In its adjudicatory order, the juvenile court continued the placement of A.S. with the fictive kin. The juvenile court did the same in a dispositional order in September 2022. In October 2022, the mother's probation was revoked, and she was sentenced to prison. The juvenile court also held a review hearing in December 2022.

The State petitioned to terminate parental rights under Iowa Code section 232.116(1)(e), (g), and (h) (2023) in conjunction with a permanency hearing in March 2023. In July 2023, the mother was denied parole. Throughout this time, the department provided visitation between the mother and A.S. for two hours weekly, and the fictive kin facilitated additional visits. Throughout her incarceration, the mother participated in various programs through the prison including a few counseling sessions; medication management; employment; and behavioral, mental-health, and life-skills classes. The mother also regularly was

in contact with A.S. and her fictive kin via telephone. At the same time, the mother cancelled two monthly visits from the department—in February and June 2023. The mother also declined to participate in mental-health therapy.

The juvenile court held a permanency review and termination-of-parental-rights hearing over two days in July and September 2023. At the hearing, a social work case manager for the department testified that "at almost every monthly visit I've had with [the mother] throughout this case, we talked about [A.S.'s] removal, and [the mother] continues to not understand why [A.S.] was removed from her care." The case manager also testified that the mother insisted that she was not actively using illegal substances at the time of A.S.'s removal. On top of that, the case manager added that at some in-person meetings, A.S. would not go to the mother but instead would cry and go towards the fictive kin, and that A.S. is reluctant and guarded around the mother as A.S. had only been in the care of the mother for two-and-one-half months before the ex parte removal order. The family support specialist testified that the mother never acknowledged that she used methamphetamine nor expressed a real desire to address her substance abuse. The family support specialist also said that she did not believe that A.S. looks at the mother "like a mom" and that A.S. is not bonded with the mother.

The mother testified that if and when she is granted parole, she plans to move to Texas but could also stay in Iowa and be released to a halfway house for a couple of months before finding stable housing. She also said that A.S. calls her "Mom, Momma, so [the mother] think[s] that there is a bond there." The mother specifically asked for a six-month extension or for a guardianship in lieu of termination with the fictive kin because she wanted "later on in life if something

were to happen for [her] to be reconsidered for a caretaker for" A.S. When asked if she was able to provide A.S. with permanency at the time of the hearing, the mother said, "No, I'm not."

In August 2023, the fictive kin became a licensed foster parent. In October 2023, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(e), (g), and (h). In its order, the juvenile court explicitly found that reasonable efforts had been made to achieve the permanency goal and that the mother failed to present clear and convincing evidence that any exception to termination should apply. The mother appeals.

**II. Standard of Review.**

We review the termination of parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). We give careful consideration to the juvenile court's factual findings and in-person observations, but we are not bound by them. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "[O]ur fundamental concern" in review of termination proceedings "is the child's best interests." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

**III. Analysis.**

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.*

First, the mother does not appear to challenge the statutory grounds for termination, so we do not address that issue. *Id.* at 40 (stating that "we do not have to discuss [the first step]" when a parent fails to dispute the existence of all grounds for termination under section 232.116(1)); *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."). Instead, on appeal, the mother asserts four arguments in two packages: (1) the department did not make reasonable efforts to reunite her with A.S., and as a consequence of that, (2) the juvenile court should have granted her more time to work towards reunification. In addition, (3) the strength of her bond with A.S. makes termination not in A.S.'s best interests, and as a consequence of that, (4) the juvenile court should have ordered a guardianship rather than termination. The mother wraps her challenge to reasonable efforts by the department into a request for six additional months to work towards reunification. The State responds that the mother failed to preserve error on this issue.

A parent cannot challenge reasonable efforts for the first time on appeal or even first raise a challenge at the termination hearing. *See In re E.H.*, No. 21-0467, 2021 WL 2709486, at *2 (Iowa Ct. App. June 30, 2021). A parent must alert the juvenile court of any perceived deficiency in services "at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). When a parent fails to timely request additional or different services, the parent waives any reasonable-efforts challenge. *Id.* Here, the mother never timely informed the juvenile court of any deficiency in services, so her reasonable-efforts challenge is waived. And on appeal, her contentions—

wanting more visitation and more counseling services—relate to alleged failures by the department that are realistically restricted by the fact the mother is in prison and because of her own decisions, including failing to fully exhaust the services offered.[3]  *See id.* at 147 n.4 (requiring a parent to identify deficiencies in services or request additional services before being able to challenge the sufficiency of the services).

To the extent that the mother also argues for an additional six months of time to work towards reunification, after the termination trial, the juvenile court may decide to not terminate parental rights if it finds there is clear and convincing evidence that CINA proceedings should continue and enters an order to extend the time for reunification in accordance with section 232.104(2)(b).  Iowa Code § 232.117(5).  The court may continue the proceedings for an additional six months if it finds "the need for removal . . . will no longer exist at the end of the additional six-month period."  *Id.* § 232.104(2)(b).  But at the same time, "we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).  Here, the mother failed to demonstrate that the need for termination—the danger to A.S. through the mother's active drug use, lack of accountability for and understanding of her actions, and incarceration due to repeated probation violations and criminal convictions—will no longer exist in six months.  With so many factors still "up in the air," we do not know if or when the mother will be

---

[3] The mother was offered mental-health counseling in prison but, prior to the termination hearing, she had chosen to only attend three sessions.

released from prison or if she will be granted parole. Likewise, she had no plan formulated once released, as she testified she might stay in Iowa or move to Texas. Therefore, the request for six additional months, along with her reasonable efforts argument, fails.

The mother also wraps a challenge based on the strength of her bond with A.S. into a request for a guardianship rather than termination. *See* Iowa Code § 232.117(5) (allowing the court, after a termination hearing, to not order termination of parental rights but instead enter an order in accordance with several sections, including section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to enter an order transferring guardianship and custody of the child to fictive kin). To establish the guardianship in lieu of termination, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child." *Id.* § 232.104(4)(a). But, as our courts have often stated, "a guardianship is not a legally preferable alternative to termination." *W.M.*, 957 N.W.2d at 315 (citation omitted); *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). Here, the mother's argument for a guardianship with the fictive kin who has cared for A.S. since her removal in June 2022 amounts to nothing more than an argument that such a guardianship is a legally preferable alternative to termination of the mother's parental rights; and, in particular given the small percentage of A.S.'s life that she has spent with the mother, we decline to order it instead of termination. The child deserves permanency, and a guardianship would not serve that need in these circumstances. *See A.M.*, 843 N.W.2d at 112.

To the extent that the mother also argues for the permissive exception to termination based on the strength of her bond with A.S., the closeness of a parent-child bond may serve as a permissive exception to termination. *See* Iowa Code § 232.116(3)(c). It is the mother's burden to establish a permissive exception. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). To do so, she has to demonstrate via "clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)). Yet, the evidence established at the termination trial showed that A.S. did not have a strong bond with the mother. Instead, A.S. appeared reluctant and guarded around the mother, likely because of the small relative amount of A.S.'s life that she spent in the care of the mother. Likewise, the family support specialist testified that she did not believe that A.S. and the mother were bonded, and the mother did not clearly refute this claim. Without clear and convincing evidence that any bond between the mother and A.S. rises to the level of preventing termination, we also decline to rely on the permissive exception.

**IV. Conclusion.**

For these reasons, we affirm the decision of the juvenile court terminating the mother's parental rights to A.S.

**AFFIRMED.**